UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

LARRY WILLIAM CORTINAS,

Plaintiff,

v.

VASQUEZ, et al.,

Defendants.

Case No. 1:19-cv-00367-JLT-SKO (PC)

**FINDINGS AND RECOMMENDATIONS TO DENY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT FOR A FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES**

(Doc. 61)

**14-DAY OBJECTION PERIOD**

Plaintiff Larry William Cortinas is proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.

## I.   BRIEF PROCEDURAL BACKGROUND

### *Summary Judgment Filings*

On October 5, 2021, Defendants Fisher, Ramos, Vasquez and Washington filed a motion for summary judgment, contending Plaintiff had failed to exhaust his administrative remedies prior to filing suit. (Doc. 61.) Plaintiff filed an opposition on October 15, 2021. (Doc. 62.) The Court granted Defendants' request for an extension of time to November 12, 2021, to file a reply. (Doc. 64.)

On November 1, 2022, Plaintiff filed a motion for an extension of time (Doc. 66) and a second opposition to the motion for summary judgment (Doc. 67). On November 4, 2022, the

1   Court issued its order denying Plaintiff's motion for an extension of time as moot, finding

2   Plaintiff had "already filed an opposition to the motion for summary judgment on October 15,

3   2021." (Doc. 68.)

4       On November 12, 2021, Defendants filed their reply to Plaintiff's original opposition.

5   (Doc. 71.)

6       On December 2, 2021, Plaintiff filed a document titled "Plaintiff Response to Defendants

7   Motion for Exhaustion Failure." (Doc. 73.) Plaintiff also filed a document titled "Plaintiff's

8   Notice of Facts Which Show Defendants Made the Appeal System Unavailable to Him at the

9   Second Level Corcoran State Prison." (Doc. 74.)

10      On December 6, 2021, Defendants filed a Motion to Strike Plaintiff's Sur-Replies. (Doc.

11  75.)

12                          ***Evidentiary Hearing & Saddozai Decision***

13      The matter was initially set for an evidentiary hearing on the exhaustion of administrative

14  remedies. (*See* Doc. 72 ["may present testimony and documentary evidence on whether the

15  appeals office at California State Prison, Corcoran, provided Plaintiff with notice(s) of the delay

16  in processing his administrative appeal (Log No. CSPC-7-18-02210) at the second level of

17  review"]; *see also* Docs. 84 [minute order], 105, 110.) Before the evidentiary hearing was held,

18  the Ninth Circuit Court of Appeals decided *Saddozai v. Davis*.[1] Its applicability to this case

19  resulted in an Order directing the parties to file supplemental briefing, and vacating the

20  evidentiary hearing then set for August 2, 2022. (*See* Doc. 119.)

21      Following receipt of the parties' briefs on the applicability of *Saddozai* (Docs. 122 &

22  123), the Court held a telephonic status conference on August 9, 2022, in which Plaintiff and

23  defense counsel indicated their willingness to participate in a settlement conference. (Doc. 125

24  [minutes].) On August 10, 2022, the Court issued its Order setting the matter for a settlement

25  conference on September 27, 2022. (Doc. 126.)

26  //

27  _____

28  [1] *Saddozai v. Davis*, 35 F.4th 705 (9th Cir. 2022).

2

1    Following review of the parties' confidential settlement conference statements, the Court

2    conducted a telephonic status conference with the parties on September 21, 2022. As a result of

3    that proceeding, the Court issued its September 22, 2022 order vacating the settlement

4    conference. (Doc. 133.) The Court ordered that discovery remain stayed pending the issuance of

5    these findings and recommendations and the assigned district judge's issuance of an order

6    concerning these findings and recommendations. (*Id.*)

7    **II.    SUMMARY OF FACTS**

8    Plaintiff alleges that, on April 30, 2018, Correctional Sergeant Vasquez instructed him to

9    place his hands through a "tray slot" so that he could be handcuffed. (Doc. 15 at 4.) Plaintiff

10   refused, stating he required a "mental health doctor." (*Id.*) Sergeant Vasquez and Correctional

11   Officer Washington then entered Plaintiff's cell. (*Id.*) Plaintiff alleges that, after he was

12   handcuffed, Vasquez start[ed] kicking and punching him in the head and neck area, while

13   Correctional Officer Fisher kicked him in the groin area. (*Id.* at 5.) Plaintiff states that one of the

14   officers then "placed a metal [o]bject into [his] anus," while Vasquez put a black hood over his

15   head, telling him to stop resisting or he would "shove it all the way in." (*Id.*) The metal object

16   was then removed, and Plaintiff was sat in a wheelchair and wheeled to a "[s]tand alone [u]nit,"

17   where Correctional Officer Ramos and Sergeant Vasquez "dump[ed]" him into a cell. (*Id.*)

18   Plaintiff contends the officers left him in the cell naked, shackled, and hooded. (*Id.*) He alleges

19   that officers refused to provide him medical attention, and that he suffered two black eyes, a nose

20   fracture, "[r]ectal bleeding," headaches, and "ears ringing." (*Id.*)

21   **A. Defendants' Undisputed Facts**

22   1.   Plaintiff Larry Cortinas (P-09908) is a prisoner in the custody of the California

23        Department of Corrections and Rehabilitation (CDCR), who at all times relevant to the

24        Complaint, was incarcerated at the California State Prison-Corcoran ("Corcoran") in

25        Corcoran, California. (ECF No. 1.)

26   2.   Plaintiff initiated this action on March 13, 2019. (ECF No. 1.)

27   3.   Plaintiff submitted appeal CSPC-7-18-02210, on April 30, 2018, in which he

28        complained as follows:

3

April 30, 2018, at or about 10:30 AM I was assaulted by the unit staff. Sgt Vasquez direct C/O Washington C/O Fisher and several unknown officer to enter my cell. dispite [sic] me being in plain view. Sitting on the bed. Sgt Vasquez punched me twice in the face cause my eyes to turn black. I was denied a use of force report, medical care or examination. They kept my shower shoes Croc 30.00 and neck brace soft 20.00. (Mendez Decl. ¶ 5, Ex. A.)

In the section of the 602 appeal form where it asks what relief is being requested, Plaintiff requested $1,000,000 and "firing of all staff who assaulted him for a clear violation of Coleman." (Id.) Appeal CSPC-7-18-02210 bypassed the first level of review, and the prison appeals office processed it as a staff complaint. (Id.)

4.  A second level response for appeal CSPC-7-18-02210, dated June 1, 2018, provides that the appeal was partially granted in that an appeal inquiry was conducted. The appeal inquiry found that staff did not violate CDCR policy with respect to the issues appealed. Plaintiff was not provided with a copy of the June 1, 2018 second level response at that time because the appeal was still pending the completion of Institutional Executive Review Committee (IERC) review. (Mendez Decl. ¶ 6, Ex. B.)

5.  While appeal CSPC-7-18-02210 was pending a second level response, the Corcoran Appeals Office provided notices to Plaintiff informing him that there was a delay in the review of his appeal. A total of twelve notices were provided to Plaintiff, and the notices are dated: June 19, 2018; August 2, 2018; September 11, 2018; October 24, 2018; December 7, 2018; January 24, 2019; March 8, 2019; April 19, 2019; June 4, 2019; July 12, 2019; August 28, 2019; October 10, 2019. Each notice indicated that there was an exceptional delay in the review of the appeal due to the "complexity of the decision, action, or policy." (Mendez Decl. ¶ 7, Ex. C.)

6.  An amended second level response for appeal CSPC-7-18-02210, dated October 16, 2019, indicates that the Institutional Executive Review Committee (IERC) reviewed the allegations contained within the appeal and determined that staff did not violate policy. Section E of the original 602 form indicates that the amended second level response was mailed/delivered to Plaintiff on October 22, 2019. At this time, a copy of the original second level response, dated June 1, 2018 (which was not previously

provided), would have also been mailed/delivered to Plaintiff. (Mendez Decl. ¶ 8, Ex. D.)

7. Plaintiff submitted appeal COR-18-2286, on May 1, 2018, in which he alleged that on April 30, 2018, Sergeant Vasquez, Officer Fisher, and Officer Washington entered his cell and assaulted him, that he was denied a use of force report and medical treatment by staff, that Officer Ramos dumped him out of a wheelchair and into his cell, and that his neck brace was not returned. This appeal was screened out as duplicative of a previous appeal. (Mendez Decl. ¶ 9, Ex. E.)

8. Plaintiff submitted appeal COR 18-2671, on May 22, 2018, in which he complained that on April 30, 2018, Sergeant Vasquez ordered an unlawful entry and that he was "assaulted, extracted, in violation of Coleman and CDCR policy." This appeal was screened out as being duplicative of appeal log no. COR-18-2210. (Mendez Decl. ¶ 10, Ex. F.)

9. The Office of Appeals only has record of Plaintiff submitting one appeal alleging that on April 30, 2018, Plaintiff was the victim of unnecessary and excessive force by Defendants Fisher, Ramos, Vasquez, or Washington at California State Prison, Corcoran (COR), as described in Plaintiff's lawsuit. (Moseley Decl. ¶ 7.)

10. The Office of Appeals received Log No. 1913766 (an appeal of Grievance Log No. COR-18-02210) on November 4, 2019, and denied the appeal on January 27, 2020. (Moseley Decl. ¶ 8.)

(Doc. 61-2.)

### III.   LEGAL STANDARDS

#### A. Summary Judgment

Summary judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party "initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The moving party may accomplish this by

1  "citing to particular parts of materials in the record, including depositions, documents,

2  electronically stored information, affidavits or declarations, stipulations …, admissions,

3  interrogatory answers, or other materials," or by showing that such materials "do not establish the

4  absence or presence of a genuine dispute, or that an adverse party cannot produce admissible

5  evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). When the non-moving party bears

6  the burden of proof at trial, "the moving party need only prove that there is an absence of

7  evidence to support the non-moving party's case." *Oracle Corp.*, 627 F.3d at 387 (citing *Celotex*,

8  477 U.S. at 325); *see also* Fed. R. Civ. P. 56(c)(1)(B).

9        Summary judgment should be entered against a party who fails to make a showing

10  sufficient to establish the existence of an element essential to that party's case, and on which that

11  party will bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322. "[A] complete failure of

12  proof concerning an essential element of the nonmoving party's case necessarily renders all other

13  facts immaterial." *Id.* at 322–23. In such a circumstance, summary judgment should be granted,

14  "so long as whatever is before the district court demonstrates that the standard for the entry of

15  summary judgment … is satisfied." *Id.* at 323.

16  **B.  Exhaustion of Administrative Remedies**

17        The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with

18  respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner

19  confined in any jail, prison, or other correctional facility until such administrative remedies as are

20  available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion of administrative remedies is

21  mandatory and "unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199,

22  211 (2007). Inmates are required to "complete the administrative review process in accordance

23  with the applicable procedural rules, including deadlines, as a precondition to bringing suit in

24  federal court." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006). The exhaustion requirement applies

25  to all inmate suits relating to prison life, *Porter v. Nussle*, 534 U.S. 516, 532 (2002), regardless of

26  the relief sought by the prisoner or offered by the administrative process, *Booth v. Churner*, 532

27  U.S. 731, 741 (2001).

28  //

1    The failure to exhaust administrative remedies is an affirmative defense, which the

2 defendant must plead and prove. *Jones*, 549 U.S. at 204, 216. The defendant bears the burden of

3 producing evidence that proves a failure to exhaust; and, summary judgment is appropriate only if

4 the undisputed evidence, viewed in the light most favorable to the plaintiff, shows the plaintiff

5 failed to exhaust. *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014).

6    On a motion for summary judgment, the defendant must prove (1) the existence of an

7 available administrative remedy, and (2) that the plaintiff failed to exhaust that remedy. *Albino,*

8 747 F.3d at 1172 (citation omitted). If the defendant meets this burden, the plaintiff then "has the

9 burden of production. That is, the burden shifts to the prisoner to come forward with evidence

10 showing that there is something in his particular case that made the existing and generally

11 available administrative remedies effectively unavailable to him." *Id.* (citation omitted).

12 "However, … the ultimate burden of proof remains with the defendant." *Id.* "If a motion for

13 summary judgment is denied, disputed factual questions relevant to exhaustion should be decided

14 by the judge." *Id.* at 1170.

15    An inmate "need not exhaust unavailable [remedies]." *Ross v. Blake*, 578 U.S. 632, 642

16 (2016). An administrative remedy is unavailable "when (despite what regulations or guidance

17 materials may promise) it operates as a simple dead end with officers unable or consistently

18 unwilling to provide any relief to aggrieved inmates"; or when "an administrative scheme [is] so

19 opaque that it becomes, practically speaking, incapable of use, [i.e.,] some mechanism exists to

20 provide relief, but no ordinary prisoner can discern or navigate [the mechanism]"; or "when

21 prison administrators thwart inmates from taking advantage of a grievance process through

22 machination, misrepresentation, or intimidation." *Id*. at 643-44.

23    Prisoners are required to exhaust the available administrative remedies prior to filing suit.

24 *Jones v. Bock*, 549 U.S. at 211; *McKinney v. Carey*, 311 F.3d 1198, 1199-1201 (9th Cir. 2002).

25 However, a prisoner who has fully complied with the PLRA's exhaustion requirement need not

26 file an entirely new federal case simply because they had not exhausted when they filed their

27 original federal complaint. *Jackson v. Fong*, 870 F.3d 928 (9th Cir. 2017); accord *Saddozai v.*

28 *Davis*, —— F.4th ——, 2022 WL 1613616 (9th Cir. May 23, 2022.)

1    When the district court concludes the prisoner has not exhausted administrative remedies

2    on a claim, "the proper remedy is dismissal of the claim without prejudice." *Wyatt v. Terhune*,

3    315 F.3d 1108, 1120 (9th Cir. 2003) (citation omitted), *overruled on other grounds* by *Albino*,

4    747 F.3d at 1168-69. "If a motion for summary judgment is denied, disputed factual questions

5    relevant to exhaustion should be decided by the judge." *Albino*, 747 F.3d at 1170. If the court

6    finds that remedies were not available, the prisoner exhausted available remedies, or the failure to

7    exhaust available remedies should be excused, the case proceeds to the merits. *Id*. at 1171.

8                          **C.  CDCR Grievance Process**

9    The CDCR has an administrative grievance system for prisoners to appeal a policy,

10   decision, action, condition, or omission by the department or staff if it has an adverse effect on

11   prisoner health, safety, or welfare. Cal. Code Regs. tit. 15, § 3084.1(a) (2017). Compliance with

12   42 U.S.C. § 1997e(a) requires California state prisoners to utilize CDCR's grievance process to

13   exhaust their claims prior to bringing suit in court. *See Sapp v. Kimbrell*, 623 F.3d 813, 818 (9th

14   Cir. 2010); *see also Woodford*, 548 U.S. at 85-86. In 2018, administrative grievances were subject

15   to three levels of review before the remedy was deemed exhausted. Cal. Code Regs. tit. 15, §

16   3084.1(b) (2017); *see also Sapp*, 623 F.3d at 818.

17                 **IV.    EVIDENTIARY MATTERS**

18                          ***Motion to Strike Sur-Replies***

19   As noted above, Defendants have filed a motion to strike Plaintiff's sur-replies. (Doc. 75.)

20   Specifically, Defendants contend Plaintiff's second opposition to the motion for summary

21   judgment (Doc. 73) and his "Notice of Facts" (Doc. 74) should be stricken as sur-replies. (Id. at

22   3-4.)

23   The Local Rules for the Eastern District of California provide for a motion, an opposition,

24   and a reply. *See* E.D. Cal. L.R. 230(l). There is nothing in the Local Rules or the Federal Rules of

25   Civil Procedure that permit the filing of a sur-reply as a matter of right. Indeed, the Court

26   generally views motions for leave to file a sur-reply with disfavor. *See Hill v. England*, No.

27   CVF05869 REC TAG, 2005 WL 3031136, at *1 (E.D. Cal. 2005) (citation omitted). However,

28   district courts have the discretion to either permit or preclude a sur-reply. *See JG v. Douglas Cnty.*

1  *School Dist.*, 552 F.3d 786, 803 n.14 (9th Cir. 2008) (district court did not abuse discretion in

2  denying leave to file a surreply where it did not consider new evidence in reply); *U.S. ex rel.*

3  *Meyer v. Horizon Health Corp.*, 565 F.3d 1195, 1203 (9th Cir. 2009) (district court did not abuse

4  discretion in refusing to permit "inequitable surreply"), overruled on other grounds by *U.S. ex rel.*

5  *Hartpence v. Kinetic Concepts, Inc.*, 792 F.3d 1121 (9th Cir. 2015).

6        The Court is mindful that, in this Circuit, courts are required to afford *pro se* litigants

7  additional leniency. *See, e.g.*, *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (quoting

8  *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010)) (holding when plaintiff "is pro se, particularly

9  in civil rights cases, [courts should] construe the pleadings liberally and ... afford the [plaintiff]

10  the benefit of any doubt"). Nonetheless, the leniency afforded *pro se* inmates need not extend to

11  permitting sur-replies "as a matter of course," and the Court is not inclined to grant such leave

12  absent a showing of good cause. *See Garcia v. Biter*, 195 F. Supp. 3d 1131, 1134 (E.D. Cal.

13  2016) (denying motion for leave to file sur-reply due to lack of good cause).

14        Here, Plaintiff did not seek leave to file a sur-reply even though the record reflects that

15  Plaintiff is capable of seeking leave from the Court to file various documents. *(See, e.g.*, Doc. 17

16  [motion to appoint counsel], Doc. 33 [same], Doc. 38 [motion for writ of habeas corpus ad

17  testificandum], Doc. 44 [same].)  The Court has also reviewed the sur-replies and finds the

18  arguments raised do not change the Court's analysis of Defendants' summary judgment motion.

19  Accordingly, Defendants' motion to strike the sur-replies should be granted and the sur-replies

20  should be stricken.

21                 ***Lack of Response to Defendants' Statements of Undisputed Fact***

22        Plaintiff has failed to properly respond to Defendants' Statement of Undisputed Facts in

23  support of the motion for summary judgment. (*See* Doc. 61-2.) Plaintiff was served with a *Rand*[2]

24  warning that included the following language:

25          In accordance with Local Rule 260(a), Defendants have filed a
        Statement of Undisputed Facts that contain discrete, specific material

26          facts to support their entitlement to summary judgment. In response
        to this Statement, Local Rule 260(b) requires you to "reproduce the

27

28  [2] *Rand v. Rowland*, 154 F.3d 952, 962-63 (9th Cir. 1998) (en banc).

1
2
3
4
5
6

itemized facts in the Statement of Undisputed Facts and admit those facts that are undisputed and deny those that are disputed, including with each denial a citation to the particular portions of any pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon in support of that denial." You may also "file a concise Statement of Disputed Facts, and the source thereof in the record, of all additional material facts as to which there is a genuine issue precluding summary judgment or adjudication." *Id.* You are responsible for filing all evidentiary documents cited in the opposing papers. *Id.*

7   (Doc. 61-3 at 2.)

8       Plaintiff neither reproduced Defendants' itemized facts, nor admitted or denied those

9   facts. Because Plaintiff has not complied with Rule 260(b),[3] the Court deems Plaintiff to have

10  admitted those facts.[4] *See, e.g.*, *Beard v. Banks*, 548 U.S. 521, 527 (2006) ("by failing specifically

11  to challenge the facts identified in the defendant's statement of undisputed facts, [plaintiff] is

12  deemed to have admitted the validity of the facts contained in the [defendant's] statement."); *Brito*

13  *v. Barr*, No. 2:18-cv-00097-KJM-DB, 2020 WL 4003824, at *6 (E.D. Cal. July 15, 2020)

14  (deeming defendant's undisputed facts as admitted after plaintiff failed to comply with Local Rule

15  260(b)); *see also Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

16      **V.      DISCUSSION**

17          **A.      *Ninth Circuit's Decision in Saddozai v. Davis***

18      On May 23, 2022, the Ninth Circuit Court of Appeals decided *Saddozai v. Davis*. On June

19  6, 2022, this Court issued an Order directing Defendants to file supplemental briefing regarding

20  the applicability of *Saddozai* to their motion for summary judgment. (Doc. 119.)

21      Defendants filed their supplemental brief, acknowledging the Ninth Circuit's *Saddozai*

22  opinion requires the Court to consider Plaintiff's second amended complaint filed on February 12,

23  2020, as the operative complaint for purposes of a PLRA exhaustion analysis. (Doc. 122 at 3-4.)

24
25

[3] The Court further observes that Plaintiff failed to reproduce Defendants' statement of undisputed facts, or to admit or deny those facts in his sur-replies.

26
27
28

[4] In the First Informational Order in Prisoner/Civil Detainee Civil Rights Case, issued March 20, 2019, Plaintiff was advised: "In litigating this action, the parties must comply with this Order, the Federal Rules of Civil Procedure ('Fed. R. Civ. P.'), and the Local Rules of the United States District Court, Eastern District of California ('Local Rules'), as modified in this Order. Failure to so comply will be grounds for imposition of sanctions which may include dismissal of the case. Local Rule 110; Fed. R. Civ. P. 41(b)." (*See* Doc. 5 at 1.)

1    Defendants acknowledged that as Plaintiff's excessive force claims against certain Defendants

2    had been exhausted via third level review on January 27, 2020, those claims are considered

3    exhausted according to *Saddozai*. (*Id.*) Defendants further contended that "Plaintiff's other

4    claims" remain unexhausted despite *Saddozai*'s holding. More particularly, as to Plaintiff's claim

5    that Defendant Ramos was deliberately indifferent to his serious medical needs, Defendants assert

6    Plaintiff's claim was properly screened out and is thus unexhausted. And, as to Plaintiff's claim

7    that any Defendant sexually assaulted him, Defendants allege Plaintiff did not submit any appeals

8    about sexual misconduct and the claim is unexhausted. (*Id.* at 4.)[5]

9          On July 15, 2022, Plaintiff filed a document titled "Plaintiff Objection and Denial to

10   Defendant's Supplemental Briefing on the Applicability of Saddozai vs Davis on the Issue of

11   Exhaustion." (Doc. 123.) Plaintiff agreed that the excessive force claims are exhausted in light of

12   *Saddozai*. (*Id.* at 2.) However, Plaintiff contended his deliberate indifference and sexual assault

13   claims were improperly screened out. (*Id.* at 1.) He further contends that his "sexual assault claim

14   was heard and addressed by California department of corrections on several occasion(s)…while

15   Plaintiff was a[t] california state prison sacramento." (*Id.*) As to these screened out appeals,

16   Plaintiff contends "c.d.c.r. denied the availability of the administrative process." (*Id.* at 2.)

17   Plaintiff sought the following: (1) an evidentiary hearing "upon the issue of sexual assault and

18   medical care"; and (2) a 60-day discovery period concerning the issue, or, alternatively, a

19   settlement conference to resolve the issue. (*Id.* at 2.)

20         Applying the holding of *Saddozai*, this Court finds Plaintiff's excessive force claims

21   against Defendants Vasquez, Fisher and Washington to be exhausted as those claims were denied

22   at the third level on January 27, 2020, before the filing of the operative complaint on February 12,

23   2020. The Court will recommend Defendants' motion for summary judgment be denied as to

24   those claims. The undersigned will consider two issues: (1) whether Plaintiff's deliberate

25   indifference claim against Defendant Ramos is exhausted; and (2) whether Plaintiff's sexual

26
---
27   [5] Defendants also indicated to the Court that the previously set evidentiary hearings were to explore
     whether administrative remedies were available concerning Plaintiff's excessive force claims and the
     notices of delay issued concerning CSPC-7-18-02210, and because *Saddozai* means the excessive force
28   claims are now considered to be unexhausted, an evidentiary hearing is no longer warranted. (*Id.* at 4, n.2.)
     The Court agrees an exploration of unavailability of that remedy is now unnecessary.

assault claim against any Defendant is exhausted.[6]

**B.  Deliberate Indifference to Serious Medical Needs: Defendant Ramos**

**1.  The Parties' Positions**

Defendants contend Plaintiff failed to exhaust his administrative remedies concerning his claim that Defendant Ramos was deliberately indifferent to his serious medical needs when Ramos "dumped" Plaintiff from his wheelchair. (Doc. 61 at 16-17.) Defendants further contend "the appeal that Plaintiff exhausted after filing this lawsuit (COR-18-02210) did not mention Officer Ramos specifically." (*Id.*) Defendants also contend the appeal that did mention Defendant Ramos—the Deliberate Indifference Grievance—was screened out and therefore unexhausted. (*Id.* at 17.)

Plaintiff does not specifically address Defendants' argument in his original opposition to the motion for summary judgment. (*See* Doc. 62.) In his supplemental brief, filed in response to this Court's order following issuance of the *Saddozai* decision, Plaintiff contends his deliberate indifference to serious medical needs claim was improperly screened out. (*See* Doc. 123.)

In their reply, Defendants contend it is undisputed "that the appeal Plaintiff exhausted … (COR-18-02210) did not mention Officer Ramos specifically. (DUF 3.) It is also undisputed that the one appeal that mentions Ramos (COR-18-2286) was properly screened out (DUF 9) and was therefore not exhausted." (Doc. 71 at 9.)

**2.  Defendants' Declarations**

Defendants have submitted the Declaration of J. Mendez, Correctional Counselor II, which provides, in relevant part:

> At the request of the Attorney General's Office, a search was conducted in IATS of appeals that were submitted by Plaintiff inmate

---

[6] For ease of reference, unless quoting a party's pleading, the Court will refer to the grievances or appeals as follows:

    18-2208 as "UNK #1"
    18-2210 as "Excessive Force Grievance"
    18-2258 as "UNK #2"
    18-2286 as "Deliberate Indifference Grievance"
    18-2671 as "Sex Assault Grievance"
    18-2978 as "Appeal re Screen Out"

Larry Cortinas CDCR No. P09908 that were received at CSP-COR from April 30, 2018, to March 13, 2019, and alleged: Sergeant Vasquez, Officer Washington, and Officer Fisher entered his cell while he was on suicide watch and assaulted him; an officer placed a metal object into Plaintiff's anus; Sergeant Vasquez placed a black hood over Plaintiff's head; Sergeant Vasquez and Officer Ramos dumped Plaintiff into a holding cell and left him there naked and hooded; and staff allegedly refused to provide Plaintiff medical attention. A search using these parameters revealed the following.

Inmate Cortinas submitted appeal log no. CSPC-7-18-02210 on April 30, 2018, in which he alleged that on April 30, 2018: Sergeant Vasquez directed Officers Washington, Fisher, and other unknown officers to enter his cell even though he was in plain view sitting on his bed; Sergeant Vasquez punched him twice in the fac[e] causing his eyes to turn black; he was denied a use of force report, medical care, and examination; and that he lost his shower shoes and neck brace. A true and correct copy of the originally submitted appeal SPC-7-18-02210 is attached as Exhibit A.

A second level response for appeal CSPC-7-18-02210, dated June 1, 2018, provides that the appeal was partially granted in that an appeal inquiry was conducted. The appeal inquiry found that staff did not violate CDCR policy with respect [to] the issues appealed. Cortinas was not provided with a copy of the June 1, 2018 second level response at that time because the appeal was still pending completion of Institutional Executive Review Committee (IERC) review, which was the procedure at CSP-COR at that time. A true and correct copy of the original second level response to appeal CSPC-7-18-02210 is attached as Exhibit B.

While appeal CSPC-7-18-02210 was pending a second level response, notices of delay were provided to Cortinas on the following dates: June 19, 2018, August 2, 2018; September 11, 2018; October 24, 2018; December 7, 2018; January 24, 2019; March 8, 2019; April 19, 2019; June 4, 2019; July 17[,] 2019; August 28, 2019; October 10, 2019. Each notice indicated that there was an exceptional delay in the review of the appeal due to the "complexity of the decision, action, or policy." True and correct copies of the notices of the delay as maintained by the Appeals Office are attached as Exhibit C.

An amended second level response for appeal CSPC-7-18-02210, dated October 16, 2019, indicates that the Institutional Executive Review Committee (IERC) reviewed the allegations contained within the appeal and determined that policy was not violated. Section E of the original 602 form indicates that the amended second level response was mailed/delivered to Cortinas on October 22, 2019. At this time, a copy of the original second level response, dated June 1, 2018 (which was not previously provided to the inmate), would have also been mailed/delivered to Cortinas. A true and correct copy of [the] amended second level response to appeal CSPC-7-18-02210 is attached as Exhibit D.

Cortinas submitted appeal COR-18-2286, on May 1, 2018, in which he alleged that on April 30, 2018, Sergeant Vasquez, Officer Fisher,

and Officer Washington entered his cell and assaulted him, that he was denied a use of force report and medical treatment by staff, that Officer Ramos dumped him out of a wheelchair and into his cell, and that his neck brace was not returned. This appeal was screened out as duplicative of a previous appeal. A true and correct copy of the originally submitted appeal COR-18-2286 and the screen out notice is attached as Exhibit E.

(Doc. 61-4 at -23, ¶¶ 4-9.) Defendants also submitted the Declaration of Howard E. Moseley, Associate Director of the Office of the Appeals (OOA), in support of the motion which provides in pertinent part:

I am familiar with the record keeping system at the OOA and have access to Plaintiff's records. At the request of the Attorney General's Office, a search of the OOA computer system was conducted on August 31, 2021, under the name of Larry Cortinas, CDCR No. P09908, for all non-health care related appeals received by the OOA. A true and correct copy of the Appeal History Report is attached as Exhibit A.

A search was also conducted of the appeals listed in Exhibit A to determine if any contained an allegation by Plaintiff that on April 30, 2018, Plaintiff was the victim of unnecessary and excessive force by Defendants Fisher, Ramos, Vasquez, or Washington at California State Prison, Corcoran (COR), as described in Plaintiff's lawsuit.

Appeal Log No. 1913766 (an appeal of Grievance Log No. COR-18-2210) contained such an allegation. [Fn. Omitted] Appeal Log No. 1913766 was received on November 4, 2019, and was denied by the OOA on January 27, 2020. A true and correct copy of Plaintiff's appeal and the OOA decision are attached as Exhibit B.

(Doc. 61-5 at 3, ¶¶ 6-8.)

### 3.  Relevant Legal Standards

A grievance suffices to exhaust a claim if it puts the prison on adequate notice of the problem for which the prisoner seeks redress. To provide adequate notice, the prisoner need only provide the level of detail required by the prison's regulations.

*Sapp v. Kimbrell*, 623 F.3d 813, 824 (9th Cir. 2010) (citing *Jones v. Bock*, 549 U.S. at 218); *see also Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th Cir. 2009) ("The primary purpose of a grievance is to alert the prison to a problem and facilitate its resolution, not to lay groundwork for litigation"). California regulations require a prisoner to "list all staff members involved" and to "describe their involvement in the issue." Cal. Code Regs. Tit. 15, § 3084.2(3). For administrative remedies to be exhausted by California prisoners as to defendants who were not identified in the

14

inmate grievance, there must be a "sufficient connection" between the claim in the appeal and the unidentified defendants such that prison officials can be said to have had "notice of the alleged deprivation" and an "opportunity to resolve it." *Reyes v. Smith*, 810 F.3d 654, 659 (9th Cir. 2016) (finding that plaintiff had satisfied PLRA exhaustion requirements as to two prison doctors despite not having identified them in his inmate appeals because there was a sufficient connection between plaintiff's appeal based on inadequate pain management, and the doctors, who served on the prison committee that had denied plaintiff medication).

In *Sapp v. Kimbrell*, the Ninth Circuit considered whether improper screening of an inmate's grievance or appeal excused the inmate's failure to exhaust his administrative remedies, and, if so, whether those appeals were improperly screened out. *Sapp*, 623 F.3d at 817. The appellate court held that when prison officials improperly screen out inmate grievances, they render administrative remedies effectively unavailable. *Sapp*, 623 F.3d at 823. In that instance, "the inmate cannot pursue the necessary sequence of appeals." *Id.*; *Nunez v. Duncan*, 591 F.3d 1217, 1226 (9th Cir. 2010) (excusing an inmate's failure to exhaust because he was precluded from exhausting administrative remedies by warden's mistaken instruction to him that a particular unavailable document was needed for him to pursue his inmate appeal).

### 4. Analysis

The Court first considers whether Defendants have met their initial burden of producing evidence showing "that there was an available administrative remedy, and that the prisoner did not exhaust that available remedy." *See Albino*, 747 F.3d at 1172.

The Court agrees with Defendants that the Excessive Force Grievance does not contain any allegation that Defendant Ramos was deliberately indifferent to serious medical needs. The Excessive Force Grievance neither mentions Defendant Ramos, nor references any wheelchair. (Doc. 61-5 at 15-18.) *See Woodford v. Ngo*, 548 U.S. at 90-91; *see also Estrada v. California Corr. Inst.*, No. 1:18-cv-00599-AWI-SAB (PC), 2021 WL 3268555, at *8 (E.D. Cal. July 30, 2021) adopted by 2021 WL 4123686 (E.D. Cal. Sept. 9, 2021) (finding the plaintiff failed to properly exhaust his administrative remedies because he did not name the defendant or specifically describe his alleged wrongdoing as required by CDCR's regulations). The

1    undersigned therefore finds it is undisputed that the Excessive Force Grievance does not serve to

2    exhaust Plaintiff's administrative remedies as to his deliberate indifference claim against

3    Defendant Ramos.   This finding, however, does not end the Court's inquiry.

4            The Deliberate Indifference Grievance, signed by Plaintiff on May 1, 2018, reads as

5    follows:

> 4/30/18 at CTC D-1 cris[i]s bed. At or about 11:00 am Sgt Vasquez
> ordered unlawful entry into a suicide cell, without permission,
> disregarding Coleman and CDCR policy to assault me. C/O Fisher
> kill me by kicking or punching testicles. C/O Sgt. Vasquez lied about
> window being covered. Yet still does not justify entry. C/O
> Washington pounded me with body shield. Even as I sat arms
> crossed. Medical and staff denied me care. CTC Lt name unknown
> refused to speak with me about use of force. *Once back by
> wheelchair, 2nd watch ASU C/O Ramos and others unknown by
> violence dumped me into my cell.* No medical neck brace returned.
> 30 dollar item taken by Sgt. Vasquez. This concludes my account of
> events.

13   (Doc. 61-4 at 31, 33; italics added.)[7]

14           As noted in Defendants' motion, the Deliberate Indifference Grievance was screened out

15   at the second level, on May 9, 2018, as duplicative of "a previous appeal upon which a decision

16   has been rendered or is pending," as it "contained multiple issues and is a duplicative of  two

17   separate appeals that are currently pending completion. Log#18-02208 which allegedly occurred

18   at ASU and log#18-02258 which allegedly occurred in CTC." (*See* Doc. 61-4 at 30 [Exhibit E].)

19   Plaintiff's opposition also includes a copy of this document, although there exists a difference

20   between the two versions. In Plaintiff's version of the document, "18-02258 [UNK #2]" is lined

21   out and beneath the strike-out appears a handwritten entry that reads "18-02210" with what

22   appears to be initials inscribed just below the handwritten entry, as though a correction was made

23   to the document. (*See* Doc. 62 at 21.) The undersigned has already determined that the Excessive

24   Force Grievance does not include any reference to Defendant Ramos or a wheelchair; therefore,

25   the Deliberate Indifference Grievance cannot be duplicative of the Excessive Force Grievance.

26

27   [7] In his declaration, Mendez summarized Plaintiff's grievance and declares it was "screened out as
     duplicative of a previous appeal." (*See* Doc. 61-4 at 3, ¶ 9.) Mendez used the singular rather than plural
28   when referring to the purported duplicity and did not identify any specific grievance.

1   Because this record does not include UNK #1 or UNK #2, a determination cannot be made

2   concerning their purported duplicity to the Deliberate Indifference Grievance.[8]

3         Improper screening is a basis for the unavailability of an opportunity to exhaust

4   administrative remedies. *Sapp v. Kimbrell*, 623 F.3d at 823 ["improper screening of an inmate's

5   administrative grievance renders administrative remedies 'effectively unavailable' such that

6   exhaustion is not required under the PLRA"].) Here, the record concerning Plaintiff's deliberate

7   indifference to serious medical needs claim against Defendant Ramos is ambiguous. It is unclear

8   what Plaintiff claimed in UNK #1 and UNK #2,  and whether the Deliberate Indifference

9   Grievance was duplicative of either UNK #1 or UNK #2. Therefore, Defendants have not met

10  their initial burden of proving there is no issue of genuine material fact as to the exhaustion of

11  Plaintiff's deliberate indifference claim. *See* Fed. R. Civ. P. 56(c)(1)(A); *In re Oracle Corp. Sec.*

12  *Litig.*, 627 F.3d at 387; *Albino*, 747 F.3d at 1166 (defendant bears burden of producing evidence

13  that proves failure to exhaust; summary judgment appropriate only if undisputed evidence, in

14  light most favorable to plaintiff, shows plaintiff failed to exhaust). Because the record is

15  ambiguous and incomplete concerning the efforts Plaintiff made, or did not make, regarding his

16  claim of deliberate indifference to serious medical needs against Defendant Ramos, that

17  ambiguity weighs in Plaintiff's favor as the non-moving party. *Albino*, 747 F.3d at 1166.

18        For the foregoing reasons, Defendants have not carried their initial burden on summary

19  judgment. Therefore, Defendants are not entitled to summary judgment on Plaintiff's claim

20  against Defendant Ramos and the undersigned will recommend Defendants' motion for summary

21  judgment be denied.

22  _____

23  [8] The Court notes that Exhibit E to the Mendez Declaration concerns the Deliberate Indifference Grievance
    dated May 1, 2018. (*See* Doc. 61-4 at 31-34.) In Plaintiff's factual recitation of the incident in that

24  document, he concluded with the words "[t]his concludes my account of events." (*Id.* at 33.) Yet a
    comparison of that document to the version of the Deliberate Indifference Grievance provided by Plaintiff

25  in his opposition reveals there is additional language that is absent from Defendants' version. Plaintiff's
    version of the document also includes the handwriting "threaten to kill me if I speak of batton in my ass.

26  At least 20 witnesses." (*See* Doc. 62 at 26.) To the extent Plaintiff anticipates using his proffered version
    of the Deliberate Indifference Grievance as some evidence at any further proceeding in this action,

27  Plaintiff will be required to explain the discrepancy between the version submitted by Defendants under
    penalty of perjury as a true and correct copy of the Deliberate Indifference Grievance and the version

28  Plaintiff has submitted in the absence of a similar sworn statement. Plaintiff will be required to establish
    that this language was not added to the grievance after it was submitted to prison officials.

### C.  Sexual Assault As to Any Defendant

#### 1.  The Parties' Positions

Defendants contend Plaintiff failed to exhaust his sexual assault claim because he did not submit any appeals complaining of sexual misconduct, "that an officer forced a 'metal [o]bject' into his anus against his will." (Doc. 61-1 at 17-18.) Defendants contend none of the submitted appeals complain of or mention "anyone placing any object into [Plaintiff's] anus" nor any behavior that could be construed as an allegation of sexual abuse. (*Id.* at 17.) Defendants recount the facts of one such appeal—the Excessive Force Grievance—and note the "related responses at the second and third levels of review further confirm the absence of any allegation of a sexual nature." (*Id.* at 17-18.)  Defendants also contend Plaintiff's "two screened out appeals (COR-18-2286 and COR-18-2671) did not mention or complain about any sexual allegations or anyone placing an object in Plaintiff's anus." (*Id.* at 18.)

Plaintiff's opposition states "CSPC-8-18-02978" addressed the sexual assault and that he has exhausted the claim. (Doc. 62 at 1.) In his supplemental brief filed in response to this Court's order concerning issuance of the *Saddozai* decision, Plaintiff contends sexual assault claim was improperly screened out. (*See* Doc. 123.)   In a single paragraph argument concerning this claim in their reply, Defendants assert Plaintiff's opposition does not address their "argument that he did not submit any appeals that specifically complained about officers allegedly sexually assault him by placing an object into his anus" and, as such, it is undisputed that Plaintiff did not exhaust his sexual assault claim against any Defendant. (*Id.* at 9.)

#### 2.  Defendants' Declarations

The Mendez Declaration provides the following pertinent statement:

> Cortinas submitted appeal COR 18-2671, on May 22, 2018, in which he complained that on April 30, 2018, Sergeant Vasquez ordered an unlawful entry and that he was "assaulted, extracted, in violation of Coleman and CDCR policy. This appeal was screened out as being duplicative of appeal log no. COR-18-2210. A true and correct copy of the originally submitted appeal COR 18-2671 and the screen out notice is attached as Exhibit F.

(Doc. 61-4 at 3-4, ¶ 10.) Again, the Moseley Declaration states:

> I am familiar with the record keeping system at the OOA and have

access to Plaintiff's records. At the request of the Attorney General's Office, a search of the OOA computer system was conducted on August 31, 2021, under the name of Larry Cortinas, CDCR No. P09908, for all non-health care related appeals received by the OOA. A true and correct copy of the Appeal History Report is attached as Exhibit A.

A search was also conducted of the appeals listed in Exhibit A to determine if any contained an allegation by Plaintiff that on April 30, 2018, Plaintiff was the victim of unnecessary and excessive force by Defendants Fisher, Ramos, Vasquez, or Washington at California State Prison, Corcoran (COR), as described in Plaintiff's lawsuit.

Appeal Log No. 1913766 (an appeal of Grievance log No. COR-18-2210) contained such an allegation. [Fn. Omitted] Appeal Log No. 1913766 was received on November 4, 2019, and was denied by the OOA on January 27, 2020. A true and correct copy of Plaintiff's appeal and the OOA decision are attached as Exhibit B.

(Doc. 61-5 at 3, ¶¶ 6-8.)

### 3.  Analysis

The question before this Court is whether Plaintiff exhausted his administrative remedies regarding his sexual assault claim. Based on the record before this Court, it is unclear.

First, as with the previous claim, the Excessive Force Grievance does not serve to exhaust Plaintiff's administrative remedies as to his sexual assault claim because the Excessive Force Grievance makes no mention of sexual assault or misconduct. (Doc. 61-5 at 15-18.) *Woodford v. Ngo*, 548 U.S. at 90-91. This does not end the Court's inquiry because Plaintiff claims the Appeal re Screen Out addressed his sexual assault claim.

The Appeal re Screen Out is attached as an exhibit to Plaintiff's opposition. It states: "May 9, 2018 My 602 was cancelled impropaly [sic]. As it was proported [sic] to contain multiple issues. It does not. I state this all occured [sic] continuously in one event. With no break." (*See* Doc. 62 at 22.) In the "Action Requested" section, Plaintiff wrote: "I want this appeal processed." (*Id.*)

The Second Level Appeal Response document dated July 25, 2018 concerning the Appeal re Screen Out includes the following:

"PROBLEM DESCRIPTION: You are submitting this appeal relative to the cancellation of CDCR-602 Appeal Log# CSPC-7-18-02286, dated May 1, 2018. You claim you are filing yet another 602

1    challenging the Appeals Coordinators inappropriate and unjustified
     refusal to accept your appeal."

2

3    (Doc. 62 at 18.) A January 24, 2019 letter from the Office of Appeals includes the following

4    language:

5    "The Second Level Response will constitute exhaustion of the
     administrative remedy provided by the CDCR Inmate 602 Appeal

6    process .... For the specific issues described in CDCR Inmate 602
     Appeal log number COR-18-02978."

7

8    (*See* Doc. 62 at 17.) Thus, the Appeal re Screen Out alleges the Deliberate Indifference Grievance

9    was improperly screened out or cancelled.

10          The Deliberate Indifference Grievance[9] was also identified as being duplicative of two

11   other grievances—either UNK #1 and UNK #2 *or* UNK #1 and the Excessive Force Grievance.

12   However, neither UNK #1 nor UNK #2 are a part of this record and, as noted above, the

13   Excessive Force Grievance makes no mention of sexual assault. Because UNK #1 and UNK #2

14   are not a part of this record, the Court again finds Defendants have not met their initial burden of

15   establishing there is no genuine issue of material fact as to whether Plaintiff's sexual assault claim

16   is unexhausted.[10]

17          Because this record is ambiguous and incomplete, Defendants have not carried their initial

18   burden on summary judgment. Therefore, Defendants are not entitled to summary judgment on

19   Plaintiff's sexual assault claim against any Defendant and the undersigned will recommend

20   Defendants' motion for summary judgment be denied.

21          The Court also notes that Exhibit F to the Mendez Declaration involves the Sex Assault

22   Grievance dated May 22, 2018. (*See* Doc. 61-4 at 37-42.) In Plaintiff's factual recitation of the

23

24   [9] While the Court has identified the grievances or appeals in defined terms rather than number for ease of
     reference, the Court considered all in reviewing the available documentary evidence concerning Plaintiff's

25   deliberate indifference to serious medical needs and sexual assault claims.

26   [10] Plaintiff asserts his sexual assault claim was exhausted by virtue of the Appeal re Screen Out (18-2978).
     That appeal specifically references the Deliberate Indifference Grievance (18-2286), which was identified

27   as duplicative of at least one grievance that is not a part of this record. The Court cannot determine
     whether the content of an unknown grievance or grievances serve to exhaust Plaintiff's sexual assault

28   claim. If either UNK #1 or UNK #2 contain a sexual assault allegation, then it appears the claim would be
     exhausted pursuant to the OA letter of January 24, 2019.

incident in that document, he concluded with the words "kicked me in the testicles." (*Id*. at 39.) A comparison of that document to the version of the Sex Assault Grievance provided by Plaintiff in his opposition reveals there is additional language that is absent from Defendants' version. Plaintiff's version of the document also includes the language: "and shoved a baton [sic] into my ass." (*See* Doc. 62 at 36.)  That additional language is also typed in what appears to be a different font than what appears in Defendants' version of the document.

To the extent Plaintiff anticipates using his proffered version of the Sex Assault Grievance as evidence at any further proceeding in this action, Plaintiff will be required to explain the discrepancy between the version submitted by Defendants under penalty of perjury as a true and correct copy of the Sex Assault Grievance and the version submitted by Plaintiff without a sworn statement. Plaintiff will be required to establish this language was not added to the grievance after it was submitted to prison officials.

## VI.   *ALBINO* & EXHAUSTION FINDINGS

The undersigned has determined the record is ambiguous and incomplete concerning the question of whether Plaintiff has exhausted his administrative remedies pertaining to his deliberate indifference to serious medical needs and sexual assault claims. Defendants' instant motion was focused on the excessive force claims asserted against Defendants Vasquez, Fisher and Washington and whether those excessive force claims were exhausted. However, following resolution of that question given the holding in *Saddozai*, the focus has shifted to Plaintiff's remaining claims.

In *Albino v. Baca*, 747 F.3d 1162, the Ninth Circuit held, in relevant part:

> Exhaustion should be decided, if feasible, before reaching the merits of a prisoner's claim. If discovery is appropriate, the district court may in its discretion limit discovery to evidence concerning exhaustion, leaving until later—if it becomes necessary—discovery directed to the merits of the suit. *See Pavey*, 544 F.3d at 742. A summary judgment motion made by either party may be, but need not be, directed solely to the issue of exhaustion. If a motion for summary judgment is denied, disputed factual questions relevant to exhaustion should be decided by the judge, in the same manner a judge rather than a jury decides disputed factual questions relevant to jurisdiction and venue. *See McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 188–90 [] (1936) (subject-matter jurisdiction); *Murphy v. Schneider Nat'l, Inc*., 362 F.3d 1133, 1139–40 (9th

Cir.2004) (venue); *Lake v. Lake*, 817 F.2d 1416, 1420 (9th Cir.1987) (personal jurisdiction). We reiterate that, if feasible, disputed factual questions relevant to exhaustion should be decided at the very beginning of the litigation.

*Id.* at 1170-71. The appellate court stated that "[i]f the district judge holds that the prisoner has exhausted available administrative remedies, that administrative remedies are not available, or that a prisoner's failure to exhaust available remedies should be excused, the case may proceed to the merits." *Albino*, 747 F.3d at 1171.

In sum, the undersigned is unable to determine, on the present record, whether Plaintiff has exhausted his administrative remedies as to Plaintiff's deliberate indifference and sexual assault claims. Therefore, the case cannot proceed to the merits. The undersigned will recommend that the parties engage in limited discovery and an evidentiary hearing be held to determine whether Plaintiff has exhausted his administrative remedies concerning the deliberate indifference to serious medical needs and sexual assault claims *only*. Any such evidentiary hearing would be scheduled after the district judge's consideration of these findings and recommendations.

## VII.   CONCLUSION AND RECOMMENDATIONS

For the reasons stated above, IT IS HEREBY RECOMMENDED that:

1.  Defendants' motion to strike the sur-replies be GRANTED;

2.  Defendants' motion for summary judgment for a failure to exhaust administrative remedies pertaining to Plaintiff's claim of excessive force against Defendants Vasquez, Fisher and Washington be DENIED;

3.  Defendants' motion for summary judgment for a failure to exhaust administrative remedies pertaining to Plaintiff's claim of deliberate indifference to serious medical needs against Defendant Ramos be DENIED without prejudice; and

4.  Defendants' motion for summary judgment for a failure to exhaust administrative remedies pertaining to Plaintiff's claim of sexual assault against any Defendant be DENIED without prejudice.

These Findings and Recommendations will be submitted to the district judge assigned to

this case, pursuant to 28 U.S.C. § 636(b)(l). **Within 14 days** of the date of service of these Findings and Recommendations, any party may file written objections with the Court. The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may result in waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **November 7, 2022**                      */s/ Sheila K. Oberto*
                                         UNITED STATES MAGISTRATE JUDGE