1

2

3

4

5

6

7

8 UNITED STATES DISTRICT COURT

9 EASTERN DISTRICT OF CALIFORNIA

10

11 LARRY WILLIAM CORTINAS,

Case No. 1:19-cv-00367-JLT-SKO (PC)

12 Plaintiff,

13 v.

**FINDINGS AND RECOMMENDATIONS FOLLOWING EVIDENTIARY HEARING**

14 VASQUEZ, et al.,

**14-DAY OBJECTION PERIOD**

15 Defendants.

16

17        Plaintiff is proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to

18 42 U.S.C. § 1983.

19        On April 13, 2023, the undersigned held an evidentiary hearing on factual disputes

20 material to resolve the question whether Plaintiff had failed to exhaust administrative remedies on

21 two of his four claims.[1] *See Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014) (court shall hold

22 evidentiary hearing to decide disputed factual questions relevant to administrative exhaustion).

23 Plaintiff appeared *pro se*; Defendants were represented by Deputy Attorney General Janet N.

24 Chen. As discussed below, the undersigned recommends that Plaintiff's deliberate indifference to

25 serious medical needs claim against Defendant Ramos be permitted to proceed and the sexual

26

27 _____

[1] The Court's November 30, 2022, Order Adopting Findings and Recommendations Denying Defendants'
Motion for Summary Judgment determined Plaintiff's excessive force claims were exhausted. (Doc. 136.)
28 The two claims at issue for purposes of the evidentiary hearing were denied without prejudice in that same
order. (*Id.*)

1   assault claims against all Defendants be dismissed with prejudice.

2   **I.     INTRODUCTION**

3       On October 5, 2021, Defendants Fisher, Ramos, Vasquez and Washington filed a motion

4   for summary judgment contending Plaintiff had failed to exhaust his administrative remedies

5   prior to filing suit. (Doc. 61.) Plaintiff filed an opposition on October 15, 2021, (Doc. 67), and

6   Defendants replied on November 12, 2021 (Doc. 71).  At the Court's request, the parties filed

7   supplemental briefing on the applicability of *Saddozai v. Davis*[2] to this action. (Docs. 122 & 123.)

8       By way of background, on November 7, 2022, the undersigned issued Findings and

9   Recommendations to Deny Defendants' Motion for Summary Judgment for Failure to Exhaust

10  Administrative Remedies. (Doc. 134.) The Court recommended that Defendants' motion (1) be

11  denied as to Plaintiff's excessive force claims against Defendants Vasquez, Fisher and

12  Washington, finding those claims to be exhausted pursuant to *Saddozai* (*id*. at 10-12), (2) be

13  denied without prejudice as to Plaintiff's deliberate indifference to serious medical needs claim

14  against Defendant Ramos (*id*. at 12-17), and (3) be denied without prejudice as to Plaintiff's

15  sexual assault claims against all Defendants (*id*. at 18-21). The Court found the record was

16  ambiguous and incomplete regarding whether Plaintiff had exhausted his administrative remedies

17  pertaining to the deliberate indifference to serious medical needs and sexual assault claims. (*Id*. at

18  21.) The Court gave the parties time to engage in limited discovery and set an evidentiary hearing

19  as to those claims only. (*Id*. at 22-23.)

20      On November 30, 2022, District Judge Jennifer L. Thurston issued an Order Adopting

21  Findings and Recommendations Denying Defendants' Motion for Summary Judgment. (Doc.

22  136.)

23  **II.     EVIDENTIARY HEARING TESTIMONY**[3]

24      After brief opening statements by the parties, Plaintiff testified on his own behalf.[4]

25

26  [2] *Saddozai v. Davis*, 35 F.4th 705 (9th Cir. 2022).
    [3] These proceedings were memorialized using an Electronic Court Recording Operator (ECRO). The Court's citations are to the timestamp assigned by the recording device as no transcript is generated.

27  [4] Due to technical difficulties (a high-pitched noise on recording) during Plaintiff's initial testimony, there is no recording of Plaintiff's initial testimony. When the technical difficulties were resolved, Plaintiff

28  testified again.

1

**A.      Plaintiff's Testimony Regarding the Sexual Assault Claims**

2      Plaintiff relied on Plaintiff's Exh. 1, and Defendants' Exhs. 5-5 and 8 to establish he

3  exhausted his sexual assault claims. (11:01:57-11:02:39.) Plaintiff stated Log No. 19-6197, an

4  Office of Appeals Third Level Decision dated May 22, 2020, shows he exhausted the sexual

5  assault claim. (11:03:38-59.) He stated he made numerous attempts to bring the claims despite

6  "reprisals taken against" him and "threats of death" to he and his family and he did all he could

7  do. (11:04:20-11:06:16.)

8         **Plaintiff's Exh. 5, Log No. 19-4575: Grievance Alleging Reprisal**

9      Plaintiff stated Log No. 19-4575 "was one of the appeals" that exhausted his sexual

10  assault claim and referenced the "reprisals that took place to prevent" him from filing the 602s.

11  (11:28:03-11:30:13.) Plaintiff stated the appeal was submitted October 21, 2019, after he filed the

12  instant lawsuit on March 13, 2019. (11:30:15-34.) Plaintiff complained about multiple issues and

13  the grievance in Log No. 19-4575 and was addressing "the issue of reprisal." (11:30:40-11:31:18,

14  11:32:34-11:35:03.) Plaintiff's grievance identifies the issues as "reprisal and false criminal

15  referral."  (11:30:40-11:35:03.)

16      Plaintiff stated Log No. 19-4575 was screened out for containing multiple issues and "was

17  to outline" all that had happened to him, including reprisals and threats. (11:35:03-11:36:57.) He

18  stated he did his "best to exhaust" and Log No. 19-4575 exhausts his sexual assault claim.

19  (11:37:57-11:39:16.)

20
       **Plaintiff's Exh. 1, Log No. 19-6197: Improper Cancellation Grievance**
21     **and Plaintiff's Exh. 2, Log No. 19-1810: Reprisal Grievance**

22      Plaintiff testified Log Nos. 19-6197 and 19-1810 (Plaintiff's Exhs. 1 & 2) involve his

23  sexual assault allegations. (11:39:16-11:43:38.) Plaintiff also stated Plaintiff's Exh. 3 references

24  Log No. 19-6197 and was his "second or third attempt to get the issue before the Office of

25  Administrative Appeals." (11:54:30-11:57:14.)

26      Plaintiff stated Log No. 19-1810 did not include a complaint about sexual assault because

27  he believes he had "already filed a document addressing that issue." (11:45:00-11:47:25.) He

28  testified he does not claim that Log No. 19-1810 exhausted his sexual assault claim but that "all

3

1   the documents considered exhausted it." (11:48:10-11:49:29.) Plaintiff further testified on cross-

2   examination that he did not continue to assert the sexual assault claim because officials kept

3   "screening it out" identifying it as "duplicate, duplicate, duplicate," and that officials refused to

4   process the appeals. (11:49:20-52.) Plaintiff stated he did all he could, but the appeals process

5   was "just not available to" him. (11:49:52-11:50:26.) Plaintiff stated Plaintiff's Exhs. 1 and 2 are

6   the documents that exhausted his sexual assault claim. (11:53:48-11:54:30.)

7   **B.    Plaintiff's Testimony Concerning the Deliberate Indifference Claim**

8         Plaintiff testified he was unable to name Defendant Ramos in his original grievance

9   because he did not know Ramos was the person who "dumped" him from the wheelchair.

10  (11:06:16-45.) Plaintiff stated Ramos' name was mentioned during "the interview which is also

11  part of the appeals process." (11:06:45-52.) Plaintiff testified he could not "do any more" than

12  add Ramos' name to the grievance process once he learned of it. (11:06:45-11:07:20.)

13  **Defense Exh. 1, Log No. 18-2208: Bifurcated Grievance**

14        Regarding Log No. 18-2208, Plaintiff stated that on April 30, 2018, he filed a Reasonable

15  Accommodation Request (1824 form) stating staff assaulted him in the Administrative

16  Segregation Unit ("ASU"). (11:10:30-11:11:36.) Plaintiff stated the "1824 [form] was converted

17  into a 602 appeal [and assigned Log No. 18-2208]," and the Department[5] "bifurcated it into a

18  staff complaint." (11:14:13-27.) He testified that a Reasonable Accommodation Request form is

19  not an appeal or grievance. (11:11:36-11:11:52; 11:12:03-17; 11:13:12-28.)  Plaintiff wanted to

20  document the "terrible thing that happened" to him the best way that he could. (11:11:52-

21  11:12:03.) Plaintiff stated that when the Department bifurcated the Reasonable Accommodation

22  Request into an appeal, the Department blocked him from any further attempts to submit an

23  appeal." (11:12:17-47; 11:13:28-36.) Plaintiff submitted Ramos's name in the 1824 form.

24  (11:12:47-11:13:12.) Later Plaintiff testified the 1824 form did not identify Ramos, but he did not

25  have the form in front of him. (11:13:36-11:15:21.)

26        When questioned about page five of Defense Exh. 1, Plaintiff stated the document

27  

28  [5] "Department" refers to prison officials or staff employed by the California Department of Corrections and Rehabilitation.

4

1  pertained to an interview of June 2, 2018, by Sergeant Gambino which included Plaintiff's

2  comment during that interview that a "heavy set Hispanic and a white female" were the

3  individuals who dumped him from his wheelchair. (11:17:00-11:18:42.) Plaintiff did not know

4  Ramos' name at the time, "they were behind" him and he was suffering from a very traumatic

5  experience. (11:18:42-11:20:21.) After Plaintiff filed the 1824 form, he filed Log No. "[18-

6  ]2286." (11:20:25-40.)

7  **Defense Exh. 3, Log No. 18-2286: Grievance Naming Ramos**

8  Concerning Log No. 18-2286, Plaintiff stated he "complained about Ramos" in this appeal

9  and it was screened out. (11:20:40-11:22:20.) Plaintiff testified the grievance was submitted May

10  1, 2018, after the agency bifurcated the earlier appeal. (11:22:20-11:23:12.)

11  **C.      Testimony of the Defense Witness**

12  Juan Mendez, who is employed as an appeals coordinator at Corcoran State Prison,

13  testified on behalf of the defense. (11:59:00-10.) Mendez had also provided a sworn declaration

14  in this matter in support of Defendants' motion for summary judgment filed in October 2021.

15  (11:59:10-27.)

16  **1.   Testimony Regarding Deliberate Indifference Claim Against Ramos**

17  **Log No. 18-2286, Defense Exh. 3: Screen Out**

18  Regarding Log No. 18-2286 Mendez testified the appeal was cancelled because it

19  contained multiple issues and was duplicative of appeals Plaintiff had previously submitted.

20  (11:59:30-12:00:24.) Although the screening notice identifies Log Nos. 18-2208 and 18-2258 as

21  duplicative, Mendez stated the reference to Log No. 18-2258 "is a typo" and was meant to refer to

22  Log No. 18-2210. (12:00:24-12:01:42.) Mendez stated Plaintiff complained of being dumped out

23  of his wheelchair by Ramos in this grievance. (12:01:42-12:02:24.) This allegation was addressed

24  in either Log No. 18-2208 or 18-2210, as reflected in the "handwriting that it was bifurcated with

25  1824 8-02182." (12:02:24-12:04:49.)

26  Mendez stated Log Nos. 18-2208 and 18-2210 are duplicative of Log No. 18-2286

27  because the 1824 form involves the "ASU incident" where Plaintiff "indicates it's Ramos that

28  dumped him." (12:05:59-12:07:42.) Mendez stated the earlier grievances are duplicative and

Case 1:19-cv-00367-JLT-SKO   Document 157   Filed 06/20/23   Page 6 of 20

1   Ramos is "mentioned for the first time" in Log No. 18-2286. (12:08:05-25.)

2   **Log No. 18-2208, Defense Exh. 1: Bifurcated Grievance**

3       Mendez stated Log No. 18-2208 pertained to an interview or response where Plaintiff

4   "stated 'it wasn't so much ASU staff assaulted me, they just dumped me out of the wheelchair'"

5   when I got back from the Correctional Treatment Center ("CTC"). (12:08:31-12:09:43.) Plaintiff

6   was asked who dumped him out of the wheelchair and replied, "a heavy set Hispanic and a white

7   female." (12:08:31-12:09:43.) Mendez stated the same conduct was alleged in Log No. 18-2286

8   and Log No. 18-2208. (12:09:43-59.) Mendez further testified:

9
10          So, it was a multiple issue. Uh, like I said [18-]2208 was the issue at
            ASU where he allegedly indicates that he was dumped from his
            wheelchair. And 18[-]2210 is the issue that happened at CTC where
11          he alleges staff went into an illegal cell extraction and he was
            assaulted.

12   (12:09:59-12:10:45.) Mendez stated Log No. 18-2208 "is the only time" Ramos was mentioned

13   and stated "[18-]2286 is the one that expressly identifies Defendant Ramos." (12:10:45-12:11:20.)

14   Mendez indicated Log Nos. 18-2208 and 18-2210 involved separate incidents in CTC and ASU.

15   (12:11:20-42.)

16   **Log No. 18-2210, Defense Exh. 2: CTC Grievance**

17       Mendez testified Log No. 18-2210 concerns the "earlier incident complained about in the

18   CTC." (12:12:08-12:13:00.) Mendez stated the allegations concerning Ramos in Log No. 18-2286

19   were already addressed by Log No. 18-2208. (12:13:02-41.) He testified, "Specifically based on

20   this document, Exh. 1 [Log No. 18-2208], Officer Ramos is not named. I see that, but the

21   [indecipherable] confidential does address the Officer Ramos." (12:13:54-12:14:59.)[6]

22       Mendez stated Log No. 18-2210 and Plaintiff's interview concerning that appeal, where

23   Plaintiff references an assault in ASU and being dumped from his wheelchair by a heavy-set

24   Hispanic, demonstrates Log No. 18-2286 is duplicative. (12:16:31-12:19:19.) Mendez stated

25   Plaintiff appealed the cancellation of Log No. 18-2286 by way of Log No. 18-2978 which was

26

27
28   [6] Discussion ensued regarding Mendez's testimony concerning his review of "confidentials" and the fact
     those documents had not been submitted as exhibits; defense counsel moved to withdraw the line of
     questioning. (12:15:00-12:16:31.)

1   ultimately denied at the second level.[7] (12:19:18-12:20:10-32.)

2   **Log No. 19-5820, Defense Exh. 7: March 25, 2019 Grievance**

3   Mendez testified Plaintiff also submitted Log No. 19-5820 dated March 25, 2019, in

4   which Plaintiff referenced an April 30, 2018, staff assault identifying Ramos "and four others."

5   (12:36:00-12:37:05.) The appeal was accepted for review at Corcoran State Prison before being

6   rejected. (12:37:19-12:38:05.)

7   Mendez stated Defense Exh. 7 "appears, from the handwriting, that that someone put 18[-

8   ]1515 on there," referring to the top of the document. (12:38:35-12:39:05.)[8] The appeals office

9   does not typically write an appeal log number in that location, but that information would be

10  added if "it was a duplicate to something or a pertinent note to this appeal." (12:39:24-54.) In

11  Mendez's experience that meant "the writing was already on there." (12:39:55-12:40:08.) Lastly,

12  Mendez stated Log No. 19-5820 was appropriately canceled because "it was pending … a use of

13  force institution safety [indecipherable] hadn't been gone through the IRC at the time."

14  (12:40:50-12:41:13.)

15  **2.  Testimony Regarding Sexual Assault Claim**

16  **Log No. 19-5820, Defense Exh. 8: Multiple Log Numbers**

17  Mendez searched for additional appeals filed by Plaintiff, including those alleging sexual

18  assault, following the submission of his earlier declaration. (12:22:20-38.) Log No. 19-5820

19  (Defense Exh. 8) is such an appeal. (12:22:39-12:23:46.) There were multiple log numbers

20  assigned to the appeal. (12:22:39-12:23:46.) The appeal was submitted or signed by Plaintiff on

21  March 25, 2019, which is the same date it was received by the Office of Appeals. (12:23:46-

22  12:24:20.) This appeal was received at the appeals office in Corcoran on multiple occasions:

23  "September 10th [2019], and then November 5th [2019], and then February 11th [2020] and also

24  March 25, 2021." (12:24:30-57.) Plaintiff complained about sexual assault in Section F (Defense

25  Exh. 8-10) when he wrote "Sgt. Vasquez, C/O Fisher and C/O Washington violated my body,

26  punched, kicked and shoved an object into my butt violating me. No one will answer this 602

27  _____

28  [7] The Department determined Log No. 18-2286 was appropriately cancelled as duplicative. (*See* Defense Exh. 5-3.)

[8] Mendez stated Log No. 18-1515 (Defense Exh. 6) does not mention Ramos. (12:38:07-35.)

1    because there was a lot of witnesses." (12:25:05-33.) Mendez believes "it was the first time [the

2    sexual assault allegation] was reviewed" or "heard of." (12:25:35-12:26:44.) Mendez was

3    uncertain when the appeal was submitted but believed Plaintiff submitted it on March 25, 2019,

4    and was received by the Office of Appeals, "headquarter level," on March 25, 2019. (12:27:02-

5    35.) The document indicates Plaintiff "bypassed the institutional level and submitted it straight to

6    headquarters." (12:27:38-12:28:03, 12:29:29-50, 12:31:26-50.)[9]

7            Mendez stated Corcoran State Prison learned about the sexual misconduct allegations

8    when headquarters forwarded the appeal to Corcoran State Prison on March 23, 2021 (Defense

9    Exh. 8-1).[10] (12:29:50-12:30:25.) Mendez testified he could not discern the date the sexual

10   misconduct allegations were made because Section A (Defense Exh. 8-1) and Section F (Defense

11   Exh. 8-10) were both dated March 25, 2019. (12:32:10-28.) Mendez stated the date stamps in

12   Section F are "third level date stamps," stamps applied by the Office of Appeals or headquarters,

13   indicating the appeal was received on "May 2nd, September 4th, October 24th [of 2019]" and

14   "there's also a handwritten note of 3/10/21." (12:32:56-12:33:06.)

15                        **Log No. 18-2671, Defense Exh. 4: May 22, 2018 Grievance**

16           Mendez stated the appeal in Log No. 18-2671 was canceled because it was considered a

17   duplicate to Log No. 18-2210 which was then still under review. (12:20:48-12:21:40.) Plaintiff

18   did not complain about sexual assault in Log No. 18-2671. (12:21:44-58.)

19                             **Appeal History Documents: Defense Exh. 10**

20           Defense Exh. 10 is the inmate appeals tracking system history report related to Plaintiff

21   and is a part of Mendez's declaration previously filed with the Court. (12:41:28-12:42:00.) The

22   document was prepared at Mendez's direction on July 7, 2020. (12:42:13-58.) Mendez reviewed

23   all appeals submitted by Plaintiff from April 30, 2018, through the end of the period covered by

24   the report and found another appeal where Plaintiff complained of Ramos dumping him from his

25   wheelchair and/or allegations of sexual misconduct. (12:43:04-40.) Mendez identified that appeal

26   _____

27   [9] Mendez stated the log number assigned at headquarters was "offender grievance tracking log number
     15349," reflecting the "SOMS" system implemented in June 2020; SOMS replaced the Inmate Appeals
     Tracking System (IATS). (12:28:12-12:29:01.)

28   [10] Referring specifically to Defense Exhs. 8-2 through 8-4, Mendez stated those are "695 cancellation
     forms" and "initially [Plaintiff's] appeal was canceled." (12:30:29-12:31:25.)

1    as "7435." (12:43:40-12:44:04.)

2       Mendez stated Plaintiff submitted 23 appeals between April 30, 2018, and the date the

3    appeals history report was created. (12:51:09-12:52:14.) He found no other grievances related to

4    the allegation against Defendant Ramos or related to the sexual assault. (12:52:16-38.)

5    **Log No. 19-7435: Plaintiff's Exh. 3 & Defense Exh. 13**

6       The parties each submitted an exhibit regarding Log No. 19-7435: Plaintiff's Exh. 3 and

7    Defense Exh. 13. Mendez testified Plaintiff's Exh. 3 includes "writing [that] is not there" on the

8    Department's version of the same grievance. (12:44:47-12:45:08; 12:48:39-12:50:53.)[11]

9       On redirect examination regarding Log No. 19-7435, Mendez testified it was not

10   appropriate for an inmate to fill out the bottom portion of the form and submit it directly to the

11   third level, or headquarters. (1:57:35-1:58:07.) He testified an inmate should submit the form "to

12   the appeals office [at the institution] indicating his rebuttal for the cancellation." (1:57:35-

13   1:58:07.) Mendez stated that unless the Office of Appeals or headquarters redirected an appeal to

14   the appeals coordinator's office at the institution, that appeals coordinator's office would have no

15   knowledge of it. (1:58:08-17.) Mendez testified he is familiar with the regulations and noted that

16   the regulations have "changed three times since that change" in June 2020. (1:58:28-35.)

17     **III.  THE EXHAUSTION REQUIREMENT**

18      The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with

19   respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner

20   confined in any jail, prison, or other correctional facility until such administrative remedies as are

21   available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion of administrative remedies is

22   mandatory and "unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199,

23   211 (2007). Inmates are required to "complete the administrative review process in accordance

24   with the applicable procedural rules, including deadlines, as a precondition to bringing suit in

25   federal court." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006). The exhaustion requirement applies

26   to all inmate suits relating to prison life, *Porter v. Nussle*, 534 U.S. 516, 532 (2002), regardless of

27   &#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;&#95;

28   [11] A discussion then ensued concerning Defense Exh. 13, provided to the Court the evening prior via email and objected to by Plaintiff as untimely. The Court allowed testimony concerning the document. (12:45:10-12:48:38.)

1    the relief sought by the prisoner or offered by the administrative process, *Booth v. Churner*, 532

2    U.S. 731, 741 (2001).

3        The failure to exhaust administrative remedies is an affirmative defense, which the

4    defendant must plead and prove. *Jones*, 549 U.S. at 204, 216. The defendant bears the burden of

5    producing evidence that proves a failure to exhaust; and, summary judgment is appropriate only if

6    the undisputed evidence, viewed in the light most favorable to the plaintiff, shows the plaintiff

7    failed to exhaust. *Albino*, 747 F.3d at 1166.

8        On a motion for summary judgment, the defendant must prove (1) the existence of an

9    available administrative remedy, and (2) that the plaintiff failed to exhaust that remedy. *Albino,*

10   747 F.3d at 1172 (citation omitted). If the defendant meets this burden, the plaintiff then "has the

11   burden of production. That is, the burden shifts to the prisoner to come forward with evidence

12   showing that there is something in his particular case that made the existing and generally

13   available administrative remedies effectively unavailable to him." *Id.* (citation omitted).

14   "However, … the ultimate burden of proof remains with the defendant." *Id.*

15       An inmate "need not exhaust unavailable [remedies]." *Ross v. Blake*, 578 U.S. 632, 642

16   (2016). An administrative remedy is unavailable "when (despite what regulations or guidance

17   materials may promise) it operates as a simple dead end with officers unable or consistently

18   unwilling to provide any relief to aggrieved inmates"; or when "an administrative scheme [is] so

19   opaque that it becomes, practically speaking, incapable of use, [i.e.,] some mechanism exists to

20   provide relief, but no ordinary prisoner can discern or navigate [the mechanism]"; or "when

21   prison administrators thwart inmates from taking advantage of a grievance process through

22   machination, misrepresentation, or intimidation." *Id*. at 643-44.

23       When the district court concludes the prisoner has not exhausted administrative remedies

24   on a claim, "the proper remedy is dismissal of the claim without prejudice." *Wyatt v. Terhune*,

25   315 F.3d 1108, 1120 (9th Cir. 2003) (citation omitted), *overruled on other grounds* by *Albino*,

26   747 F.3d at 1168-69. "If a motion for summary judgment is denied, disputed factual questions

27   relevant to exhaustion should be decided by the judge." *Albino*, 747 F.3d at 1170. If the court

28   finds that remedies were not available, the prisoner exhausted available remedies, or the failure to

10

exhaust available remedies should be excused, the case proceeds to the merits. *Id*. at 1171.

"[T]he PLRA ... does not require exhaustion when circumstances render administrative remedies 'effectively unavailable.'" *Sapp v. Kimbrell*, 623 F.3d 813, 822 (9th Cir. 2010) (quoting *Nunez v. Duncan*, 591 F.3d 1217, 1226 (9th Cir. 2010)); *Rodriguez v. Cnty. of Los Angeles*, 891 F.3d 776, 792 (9th Cir. 2018). For example, "improper screening of an inmate's administrative grievances renders administrative remedies 'effectively unavailable' such that exhaustion is not required under the PLRA. If prison officials screen out an inmate's appeals for improper reasons, the inmate cannot pursue the necessary sequence of appeals, and administrative remedies are therefore plainly unavailable." *Sapp*, 623 F.3d at 823; *see also Andres v. Marshall*, 867 F.3d 1076, 1079 (9th Cir. 2017) (per curiam) ("When prison officials improperly fail to process a prisoner's grievance, the prisoner is deemed to have exhausted available administrative remedies. In such circumstances, prison officials have 'thwart[ed] inmates from taking advantage of [the] grievance process,' making that process unavailable," quoting *Ross*, 578 U.S. at 644). "To fall within this exception, a prisoner must show that he attempted to exhaust his administrative remedies but was thwarted by improper screening." *Sapp*, 623 F.3d at 823. "In particular, the inmate must establish (1) that he actually filed a grievance or grievances that, if pursued through all levels of administrative appeals, would have sufficed to exhaust the claim that he seeks to pursue in federal court, and (2) that prison officials screened his grievance or grievances for reasons inconsistent with or unsupported by applicable regulations." *Id*. at 823-24.

## IV.   DISCUSSION AND ANALYSIS

### A.   The Grievance Related to Plaintiff's Deliberate Indifference to Serious Medical Needs Claim Against Defendant Ramos Was Improperly Screened Out, Thereby Making Administrative Remedies Unavailable

Defendants assert Plaintiff's claim against Ramos was properly screened out as duplicative and, as a result, Plaintiff has failed to exhaust his deliberate indifference to serious medical needs claim. Plaintiff asserts he did all he could to exhaust this claim and the Department improperly screened out his grievance identifying Ramos. Based on the record of the hearing, the Court concludes Plaintiff should be able to proceed on his deliberate indifference to serious

11

1    medical needs claim against Ramos.

2         The defense contends Log No. 18-2286 is duplicative of Log Nos. 18-2208 and 18-2210.[12]

3    Log No. 18-2208 was created by the Department and "bifurcated" from a Reasonable

4    Accommodation Request form submitted by Plaintiff on April 30, 2018.  Plaintiff states he was

5    "assaulted by 2nd watch ASU unit" while "being returned in a wheelchair" and asks for "the

6    names of all staff working ASU 4/30/18." (*See* Defense Exh. 7-1.) The document does not

7    identify Ramos and supports Plaintiff's testimony that he did not know Ramos' name on the date

8    of the incident. Log No. 18-2208 also fails to reference Plaintiff having been *dumped* from the

9    wheelchair; it only references "being returned in a wheelchair." Accordingly, Log No. 18-2286 is

10   not duplicative of Log No. 18-2208. Log No. 18-2210 also concerns the actions of Defendants

11   Vasquez, Washington and Fisher on April 30 2018, but makes no mention of a wheelchair or

12   Defendant Ramos. (*See* Defense Exh. 2-1, 2-3.) To that end, Log No. 18-2286 is not duplicative

13   of Log No. 18-2210.

14        Here, Plaintiff sought to hold Vasquez, Washington and Fisher responsible for their

15   actions on April 30, 2018, and to hold Ramos, the individual who dumped him from his

16   wheelchair, responsible for his actions on that same date. Although the Department "bifurcated"

17   Plaintiff's Reasonable Accommodation Request, creating Log No. 18-2208, the Reasonable

18   Accommodation Request did not specifically identify Ramos and only references Plaintiff's

19   return to his cell in a wheelchair, not his having been dumped from the wheelchair. Log No. 18-

20   2210 also makes no mention of Ramos or a wheelchair. Mr. Mendez acknowledged that neither

21   Log No. 18-2208 nor Log No. 18-2210 mention Ramos and that Ramos is mentioned "for the first

22   time" in Log No. 18-2286. Log No. 18-2208 and Log No. 18-2210 are therefore not the same.

23   The Court finds the Department's duplication determination to be unreasonable.[13]

24   _____

25   [12] Defense Exh. 5-5, the second level screening notice concerning Log No. 18-2286, states the appeal "is a
     duplicate of two separate appeals that are currently pending completion. Log#18-02208 which allegedly
     occurred in ASU and log#18-02258 which allegedly occurred in CTC." Defense witness Mendez testified
26   he believed the reference to Log No. 18-2258 "is a typo" and that the handwritten correction seen on the
     Exh. accurately identifies Log No. 18-2210. (12:00:24-43.)

27
     [13] Section 3084.6(c)(2) permits the cancellation of appeal that "duplicates an inmate or parolee's previous
28   appeal upon which a decision has been rendered or is pending."

12

1    Mr. Mendez testified that Log No. 18-2286 was duplicative because in a June 2, 2018,

2 interview Plaintiff advised he was dumped from his wheelchair by a "heavy set Hispanic." But

3 there was no duplication—there was only a reference to Plaintiff having been returned in a

4 wheelchair, without reference to any wheelchair-associated wrongful action in Log No. 18-2208.

5 Further, Log No. 18-2210 makes no reference to a wheelchair or to Ramos. Additionally, when

6 Log No. 18-2286 was canceled as duplicative on May 9, 2018, the June 2, 2018, interview had

7 not yet occurred.

8                          **1.   The Incidents at CTC And ASU Are Related**

9    The defense also contends the incident at CTC is separate from the incident occurring in

10 ASU.[14] The Court does not agree that treating the incident occurring at CTC separate from the

11 incident occurring in ASU, which occurred on April 30, 2018, is reasonable or dispositive of the

12 exhaustion issue. *See, e.g., Martinez v. Robinson*, No. C 09-1349 MHP (pr), 2010 WL 3001381,

13 at *3 (N.D. Cal. July 29, 2010) ("That Martinez did not allude to retaliation in the appeal is not

14 dispositive because, when he attempted to submit an inmate appeal that did mention Robinson's

15 alleged retaliation, the appeals coordinator screened it out as duplicating" an earlier appeal …

16 while maintaining in that same appeal that the retaliation claim was a separate matter, afforded

17 the plaintiff no available remedy").

18    Plaintiff's claims concern a single date: April 30, 2018. Plaintiff's excessive force and

19 sexual assault claims name Defendants Vasquez, Fisher and Washington and the events allegedly

20 began in the CTC. The actions allegedly taken by those individuals led directly to Plaintiff being

21 transported elsewhere before being sent to the ASU in the company of Ramos and others,[15]

22 resulting in Plaintiff's deliberate indifference to serious medical needs claim against Ramos.

23 Plaintiff's alleged claims, excessive force, sexual assault and deliberate indifference to serious

24 medical needs, are related to one another.

25    By cancelling Log No. 18-2286 as duplicative of 18-2208 and 18-2210, the Department

---

[14] Mendez was not working in the appeals coordinator's office when the duplicity determination was made. (1:56:53-1:57:03.)

[15] In the operative second amended complaint, Plaintiff indicates Defendant Vasquez was present at some point while he was in the wheelchair and accompanied by the correctional officer later identified as Ramos. (*See* Doc. 15 at 5.)

effectively prevented Plaintiff, intentionally or unintentionally, from exhausting his deliberate indifference to serious medical needs claim against Ramos. *Albino*, 697 F.3d at 1034 (affirmative actions by prison officials that prevent exhaustion, even if done innocently, are grounds for excusing compliance with the exhaustion requirement); *Sapp*, 623 F.3d at 817; *see also Fordley v. Lizarraga*, 18 F.4th 344, 352 (9th Cir. 2021) ("where inmates take reasonably appropriate steps to exhaust but are precluded from doing so by a prison's erroneous failure to process the grievance, we have deemed the exhaustion requirement satisfied," citing to *Andres v. Marshall*, 867 F.3d 1076, 1079 (9th Cir. 2017) & *Sapp*, 623 F.3d at 823)).

In *Sapp*, the Ninth Circuit held that "improper screening of an inmate's administrative grievances renders administrative remedies 'effectively unavailable' such that exhaustion is not required under the PLRA." *Sapp*, 623 F.3d at 817. If prison officials screen out an inmate's appeals for improper reasons, the inmate cannot pursue the necessary sequence of appeals, and administrative remedies are therefore plainly unavailable." *Id*. at 823. The Court noted this exception "promotes exhaustion's benefits by removing any incentive prison officials might otherwise have to avoid meaningfully considering inmates' grievances by screening them for improper reasons." *Id*. To fall under this exception, the inmate must show "(1) that he actually filed a grievance or grievances, that, if pursued through all levels of administrative appeals, would have sufficed to exhaust the claim that he seeks to pursue in federal court, and (2) that prison officials screened his grievance or grievances for reasons inconsistent with or unsupported by applicable regulations." *Id*. at 823-24. The court also did not "foreclose the possibility that exhaustion might also be excused where repeated rejections of an inmate's grievances at the screening stage give rise to a reasonable good faith belief that administrative remedies are effectively unavailable." *Id*. at 826. In *Albino*, the Ninth Circuit noted that in *Sapp* and *Nunez*, administrative remedies were effectively unavailable due to affirmative acts by prison staff, even if done innocently. *Albino*, 697 F.3d at 1034.

Here, Plaintiff has met the first *Sapp* prong by filing a grievance or appeal asserting that Defendant Ramos dumped him from his wheelchair. When the appeal was cancelled as duplicative, Plaintiff appealed the cancellation. Plaintiff has shown he filed a grievance, Log No.

18-2286, that if pursued through all levels of the administrative process, would have been sufficient to exhaust his deliberate indifference to serious medical needs claim against Defendant Ramos. The Court finds Plaintiff has met the second *Sapp* prong by establishing that Corcoran prison officials screened out his grievance as duplicative, a reason inconsistent with or unsupported by regulation. *Sapp*, 623 F.3d at 823-24.

In sum, Defendants have not carried their ultimate burden of proof to show that Plaintiff failed to exhaust his administrative remedies concerning his claim against Defendant Ramos. *Williams*, 775 F.3d at 1191; *Albino*, 747 F.3d at 1172. The Court finds the Department's handling of Plaintiff's grievance related to his deliberate indifference to serious medical needs claim against Defendant Ramos effectively made administrative remedies unavailable to Plaintiff through improper screening, *Ross*, 578 U.S. at 644-45, and finds Plaintiff's deliberate indifference to serious medical needs claim should be permitted to proceed against Defendant Ramos. The Defendants also failed produce any evidence to support the assertion that Plaintiff failed to exhaust his administrative remedy concerning the deliberate indifference allegation against Defendant Ramos. *Albino,* 747 F.3d at 1172.

**B.  Plaintiff Failed To Exhaust His Sexual Assault Claims Against Defendants**

Defendants contend Plaintiff has not exhausted his sexual assault claims because he raised them for the first time in 2019 after he filed this lawsuit. Defendants further contend Plaintiff improperly bypassed the first and second levels of review, thereby failing to comply with the Department's grievance procedures, resulting in unexhausted claims. Plaintiff contends he has exhausted his sexual assault claims. Based on the record of the hearing, the Court concludes Plaintiff's sexual assault claims are unexhausted.  For the reasons set forth below, the Court finds Plaintiff failed to exhaust his sexual assault claims.

Plaintiff's reliance on Plaintiff's Exh. 1, Defense Exh. 5-5 and Defense Exh. 8 to establish exhaustion of his sexual assault claim is misplaced. Plaintiff's Exh. 1 concerns Log No. 19-6197 in which Plaintiff appealed the cancellation of Log No. 19-1810. Log No. 19-6197 is signed and dated August 27, 2019, and makes no reference to *sexual* assault. Defense Exh. 5-5 is the second level screening identifying Log No. 18-2286 as duplicative and also made no reference to *sexual*

1   assault. Although Defense Exh. 8, bearing Log No. 19-5820, signed and dated March 25, 2019,

2   alleges Defendants "shoved" an "object" into Plaintiff's anus (*see* Defense Exh. 8-10 [Section

3   F]), this grievance was rejected for a number of reasons, including its untimeliness.

4           Plaintiff testified Log No. 19-6197 was the "first part" of his attempt to exhaust his sexual

5   assault allegations; the "second part of exhaustion" involved Log No. 19-4575. A review of Log

6   No. 19-4575 reflects it was dated and signed October 21, 2019. (*See* Plaintiff's Exh. 5-4, 5-5.)

7   Plaintiff however filed the instant action, which he alleges contained his sexual assault claim, on

8   March 25, 2019—approximately seven months before submitting Log No. 19-4575. Plaintiff also

9   testified Log No. 19-4575 was screened out for containing multiple issues,[16] and that he

10  complained about sexual assault in Section A of Log No. 19-6197, and in Section B, he identified

11  Log No. 19-1810 as his supporting documentation. (*Id*.) Once again, neither Log No. 19-6197 nor

12  Log No. 19-1810 reference *sexual* assault.

13          Additionally, Mr. Mendez testified that while Log No. 19-5820 does include allegations of

14  sexual misconduct, the appeal is dated March 25, 2019, and was the "first time" such claims were

15  reviewed. Mendez further testified that Plaintiff "bypassed the institutional level and submitted it

16  straight to headquarters." Corcoran only learned of the allegations when headquarters forwarded

17  the appeal to Corcoran.[17]

18                  **1.  Plaintiff Did Not Timely Complain About Sexual Assault**

19          The evidence established that Plaintiff did not reference any sexual assault or misconduct

20  by Defendants in his early grievances following the April 30, 2018, incident. In fact, immediately

21  following the incident, Plaintiff referenced only a "bleeding wrist cut"[18] and black eyes.[19] The

22  injuries to Plaintiff's wrist and eyes came from what Plaintiff described as officers using a shield

23  to hold him down on the floor, striking him with the shield, and punching or hitting him with

24  fists. In another early grievance, Plaintiff alleged one of the Defendants kicked him in the

---

[16] This grievance was screened for involving "multiple issues that have allegedly occurred in different facilities." (*See* Plaintiff's Exh. 5-1.)

[17] Corcoran only learned of the allegations when headquarters forwarded the appeal to Corcoran. The Corcoran Inmate Appeals Office stamps include the following dates of receipt: 9/10/19, 11/5/19, 2/11/20 & 3/23/21. *See* Defense Exh. 8-1.

[18] Log No. 18-2208, Defense Exh. 1-7.

[19] Log No. 18-2210, Defense Exh. 2.

1   testicles.[20] It was not until March 2019—after this action was filed—that Plaintiff submitted a

2   grievance that alleged any sexual assault or misconduct. Therefore, Plaintiff's allegations of

3   sexual assault or misconduct were untimely.

### 2.   Plaintiff's Evidence Includes Discrepancies

5          Mendez also testified to discrepancies between Plaintiff's and the defense's versions of

6   the relevant exhibits, in particular Plaintiff's Exh. 3 and Defense Exh. 13.[21] He noted the exhibits

7   are different because: (1) the bottom of the March 17, 2020 second screening form is "blank,"

8   while Plaintiff's version has a handwritten entry; and (2) page five of Plaintiff's Exh. 3 pertains to

9   Log No. 18-2210, not Log No. 19-7435. Therefore, Plaintiff's Exh. 3 is different from Defense

10  Exh. 13 because page five of Plaintiff's version concerns another grievance altogether, and the

11  handwritten entry at the bottom of the second screening form does not appear on the

12  Department's version of Log No. 19-7435.

### 3.   Plaintiff Bypassed Available Administrative Remedies

14         The PLRA requires proper exhaustion of administrative remedies. *Woodford*, 548 U.S. at

15  83-84. If prisoners desired to and were permitted to "bypass available administrative remedies,"

16  they could simply file a late grievance. *Id.*, at 95. Even if prison officials decided to accept the

17  late grievances, prisoners could still bypass the system "by violating other procedural rules until

18  the prison administration ha[d] no alternative but to dismiss the grievance on procedural grounds.

19  We are confident that the PLRA did not create such a toothless scheme." *Id*.  In *Cervantes v.*

20  *Lindsey*, a prisoner argued that presentation of his claims in letters to the agency that were acted

21  upon equaled proper exhaustion, despite the availability of a prison grievance system. The Court

22  held that those efforts did not amount to proper exhaustion: "[T]he courts cannot countenance an

23  inmate's intentional noncompliance with the administrative appeals process or critical steps

24  within it." *Cervantes v. Lindsey*, No. 1:16-cv-00343-BAM (PC), 2017 WL 1356064, at *3 (E.D.

25  Cal. Jan. 27, 2017) (citing *Woodford*, 548 U.S. at 95-96).

---

[20] Log No. 18-2286, Defense Exh. 5.
[21] The Court overrules Plaintiff's objection to Defense Exh. 13.

1      When an inmate bypasses available administrative remedies, the claim or claims were not

2 properly presented and are therefore unexhausted. *Woodford*, 548 U.S. at 83-84. Here, Plaintiff

3 bypassed available administrative remedies when he submitted a grievance including sexual

4 assault allegations directly to the third level, or Office of Appeals at headquarters in Sacramento.

5 Plaintiff's sexual assault claims are therefore unexhausted.

6      Finally, Plaintiff's contention that his administrative remedies regarding his sexual assault

7 allegations were unavailable due to his fear of retaliation or reprisal lacks merit. "[A] prisoner is

8 excused from the exhaustion requirement in circumstances where administrative remedies are

9 effectively unavailable, including circumstances in which a prisoner has reason to fear retaliation

10 for reporting an incident." *Rodriguez v. Cty. of Los Angeles*, 891 F.3d 776, 792 (9th Cir. 2018)

11 (citing *McBride v. Lopez*, 807 F.3d 982, 987 (9th Cir. 2015)). "In order for a fear of retaliation to

12 excuse the PLRA's exhaustion requirement, the prisoner must show that (1) 'he actually believed

13 prison officials would retaliate against him if he filed a grievance'; and (2) 'a reasonable prisoner

14 of ordinary firmness would have believed that the prison official's action communicated a threat

15 not to use the prison's grievance procedure and that the threatened retaliation was of sufficient

16 severity to deter a reasonable prisoner from filing a grievance.'" *Id*. (citing *McBride*, 807 F.3d at

17 987). Here, Plaintiff's allegations consist of generalized and speculative fear of retaliation which

18 fail to satisfy the *McBride* standard.

19      Plaintiff's contention that his Prison Rape Elimination (PREA) complaint exhausted his

20 administrative remedies regarding the sexual assault allegations also lacks merit because PREA

21 complaints do not serve to properly exhaust a claim through the administrative grievance process.

22 *See Hunter v. Thompson*, 631 F. App'x 488, 489 (9th Cir. 2016) ("The district court properly

23 dismissed as to defendants Thompson and Burnette because, although Hunter made complaints of

24 harassment through [PREA] procedures, Hunter did not properly exhaust through the Offender

25 Grievance Program, and did not show that administrative remedies were effectively unavailable

26 to him," citing *Woodford*, 548 U.S. at 90).

27      At the evidentiary hearing, the Court may "inquire into the facts as they really exist,"

28 *McNutt v. Gen. Motors Acceptance Corp*., 298 U.S. 178, 188-90 (1936), and may "resolve any

1    questions of credibility or fact," *Lake v. Lake*, 817 F.2d 1416, 1420 (9th Cir. 1987). While parties

2    may be expected to simply reiterate their positions as stated in their briefs, one of the purposes of

3    an evidentiary hearing is to "enable [] the finder of fact to see the witness's physical reactions to

4    questions, to assess the witness's demeanor, and to hear the tone of the witness's voice....'" *United*

5    *States v. Mejia*, 69 F.3d 309, 315 (9th Cir. 1995). This assists the finder of fact in evaluating the

6    witness' credibility. *Id.*

7          Here, Plaintiff filed this action prior to submitting a grievance alleging sexual assault and

8    the Court finds no credible evidence that he was prevented from doing so. In fact, Plaintiff

9    submitted a grievance or grievances regarding sexual assault allegations after this action was

10   filed. Plaintiff presented no credible evidence that he attempted to grieve those allegations before

11   filing this action in federal court. Plaintiff's testimony concerning the content of the relevant

12   grievances and his efforts to exhaust the sexual assault allegations are not credible.

13         In sum, the documentary evidence and the testimony at the evidentiary hearing reveal that

14   Plaintiff's sexual assault allegations were untimely, bypassed available administrative remedies,

15   and involved discrepancies. As a result, Plaintiff cannot allege sexual assault claims in this action.

16   *Woodford*, 548 U.S.at 88, 93; *Jones*, 549 U.S. at 211.

17         **V.     CONCLUSION AND RECOMMENDATIONS**

18         For the foregoing reasons, this Court RECOMMENDS the following:

19   1.   That Plaintiff's deliberate indifference to serious medical needs claim against

20        Defendant Ramos be permitted to proceed; *and*

21   2.   That Plaintiff's sexual assault claims against all Defendants be dismissed with

22        prejudice.

23         These Findings and Recommendations will be submitted to the district judge assigned to

24   this case, pursuant to 28 U.S.C. § 636(b)(l). **Within 14 days** of the date of service of these

25   Findings and Recommendations, a party may file written objections with the Court. The

26   document should be captioned, "Objections to Magistrate Judge's Findings and

27   Recommendations." Failure to file objections within the specified time may result in waiver of

28

rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **June 16, 2023**                         /s/ *Sheila K. Oberto*
                                                      UNITED STATES MAGISTRATE JUDGE